May it please the Court. Good morning, Your Honors. I'm Ron Turovsky of Manatt, Phelps & Phillips, and I represent the Appellant in Cross-Eppley Regency Outdoor Advertising. When you view the case overall, I think it's quite clear that something here has gone awry. You have a situation where the District Court has concluded that Regency's First Amendment rights were violated, as they were applied to it, by the Community Redevelopment Agency of Los Angeles. But at the end of the day, the result of that was that Regency was entitled to recover the costs of filling out and submitting two applications and nothing more. And I think it's quite clear that something's wrong with that picture, and the question is, how did that happen? How did it go awry? And I think it happened because of a variety of individual rulings by the District Court that were in error and that whittled things away after Regency's First Amendment rights were found to have been violated. And I would like to address certain of those rulings, as we have in our brief, just some of them, and not to repeat, but just to emphasize certain things. With respect to, for example, the determination by the trial court, or the decision by the trial court, sui sponte to grant summary judgment against Regency on the issue of lost profit damages for its First Amendment violation, and also the issue of whether or not it was appropriate to grant the injunction. And I'd like to talk about the facial invalidity ruling that the District Court made, because we think that was in error, and then address, time permitting, the cross appeal that has been filed by the CRA, urging that, as applied, there was no violation with these provisions. So turning first to Regency's appeal and the first issue having to do with the sui sponte grant of summary judgment on the issue of damages for the violation of Regency's First Amendment rights. I think there is agreement amongst the parties that it is required that there be statutory notice before summary judgment is granted, and that a party has a full opportunity to vet the issues, and is on notice that the claim that's being contemplated for dismissal is under review by the court. And here there was no notice of any kind to that effect. The CRA, for example, which filed a summary judgment motion, did not seek summary adjudication or partial summary judgment, excuse me, on the issue of Regency's lost profits for the First Amendment claim. What the CRA argued is that there was an insufficient takings claim here, that you can't assert based on a leasehold interest or the property rights that Regency had a taking. They did not argue there were no lost profit damages. They did not give notice of that. The City of Los Angeles, in its summary judgment motion, simply stated that we approve these applications. The CRA did not. So the problem is, whatever the problem is, it's with the CRA, not us. So that wouldn't give Regency notice. And the court never stated that this particular issue was in controversy. It was under review by the court and might be dismissed. The court said that it sort of did in connection with an order that it issued to further brief standing. Well, I think, first of all, an order on standing by its nature is not a notice of the possibility that or the review by the district court of Regency's rights to lost profit injuries from a First Amendment claim. That does not give sufficient notice. Second, that particular order was only on the question of standing, not on damages. Third, the court limited the parties in that order and specifically said you can't submit any new evidence to support this. And so that's certainly not notice that Regency's claim is possibly going to be dismissed. You had a follow-up hearing. Didn't the district court have a follow-up hearing on that issue? The district court did have a follow-up. Well, he had a briefing on simply the question whether or not I already ruled on this. He didn't say, okay, let's open it up and now submit your evidence. Let me evaluate it. The question was just did I rule already? Did I grant sui sponte summary judgment against you? And he concluded he did not by relying on the things I'm now mentioning. He went back to the standing order and he went back to arguments made by the other side in connection with the taking claim, the inverse condemnation claim. He did not say this is my notice, bring on your evidence, and if you don't do it now then you're going to lose the claim. That would have been notice. That was never done. What happened is he ruled years earlier in a lengthy proceeding, he ruled years earlier that this issue was now he ruled in connection with other issues, other summary judgment issues, and frankly just locked in and would not relent later when the issue was raised by Regency and said, hey, this was sui sponte. We should have the right to do so. He simply said no more, no. And he looked at the standing order that he issued earlier and he looked at an argument made by the other side having to do with the takings but didn't identify any previous notice, couldn't identify any previous motion for summary judgment or partial summary judgment that would have, in fact, raised that question. So I think it's clear there was a sui sponte grant of summary judgment on a critical issue that really changed the whole dynamic of the case from one where Regency would have been in a position to submit the evidence. Ironically, the court even delineated what kind of evidence he would have liked to see, things like experts, we've talked about that in other contexts today, putting on evidence of the likelihood that you would have revenues, evidence that billboards make money, things along that nature. None of that was allowed. None of that was ever submitted by Regency because there was never any call to do so in the context of whether or not Regency has standing or in the context of whether there's a takings claim. Because, again, the CRA simply argued in the context of a takings claim that it doesn't matter if you have leases, it doesn't matter if you have that type of property right, it's just too intangible, it doesn't rise to the level of a taking. Let me move on to ask you about your injunction argument. My understanding is that the city has now banned all billboards so that, in fact, you're not, you wouldn't be entitled to a billboard and you weren't entitled at that point. You didn't have a vested right to it. Your injunction, though, says, or your challenge says, well, we should order the city and the CRA to permit your billboard. How can that be since they've now banned all billboards? I think under the law. That's correct. I'm sorry. If, in fact, that's correct, that there is a ban in place. Well, there's a lot of controversy over whether or not in the city of Los Angeles, as you probably could tell, whether there's a ban or whether a ban with exceptions, but clearly if the issue were are there billboards going up in CRA areas, we submitted evidence in the record showing many, many billboards going up in the CRA areas where there is purported to be a ban. So there are, the scheme has changed in that there is a ban where there are specific exceptions and through variances they go in. But the important point that I also want to stress is that the case is recognized that the city can't, in essence, in the context of an injunction, take advantage of a change in the law for a whole host of reasons, including it wouldn't be fair to simply say we're going to, you were eligible and by the way in this instance the city approved these. It was just now getting CRA sign-off. But in that context where the city, where the CRA said no and then changes the law to say, well, you could have gotten it then, but now there's a new ban and so you're not allowed. So that excuses our behavior. Courts have recognized, for example, the Lamar case, which is 328 F sub second 725, that you can't change the law to preclude the issuance of an injunction. And we've also cited... But I guess the reality is that at the time when you asked for the injunctive relief, I don't find anything in the record of the law which would suggest you had any right to the relief or to the billboards you wanted necessarily. That's what we're disputing at this point. And then the same people who said no problem said we're now banning all new billboards, which would seem to me to end the reason for the injunction. Maybe if you have damages you do, but your injunctive relief is over. I don't think it is over for a whole host of reasons as I've indicated. I mean, if the very party who was with you changes its mind and now bans it all, and I don't know the exceptions I realize you're suggesting, but if it was a total ban, it doesn't seem to me there's any reason for me to get involved in giving injunctive relief to what L.A. did, which is not even a part of this. Well, in addition, first of all, this is both as to the CRA and to Los Angeles what I'm addressing, but under the regulations that the city and the CRA adopted, and we've cited them in the record at pages 1673, 1740, and 1745, the city's own rules say that the rules were in effect at the time of the application continues. So if there's subsequent changes, that will not stop the consideration of the permit. So to carry that forward, if those laws continue to apply that applied at the time of the application, then there would be no issue with respect to a subsequent moratorium. The law is as you find it. Are you suggesting then only as to the applications already submitted? That would be for applications that were submitted at the time they were then law. Already submitted. So I understand an injunction that the city, the CRA, cannot apply unconstitutional permit requirements to you, but I don't see the basis for saying, and you have to grant the permit application. That's where I'm losing you. Well, I think it's a result of really what I just indicated. Number one, the city has established policy that it's going to say that we look back in time at the time of the application. So even without the decision to make it invalid, if we had just simply moved forward, we would have had the right to proceed notwithstanding subsequent changes. Are those in the record? Those are in the record. The provisions that we've cited are in the record. And also the case law that says that is in the record, that someone can't change the law and say, well, there's another way we can stop you now based on new provisions. But you're really arguing the city is the same as the region, as the CRA. And I didn't see the CRA involved. It was the city involved who had given you permission before. The city gave permission, but it said we have to go to the CRA to get approval. The CRA said no, and that's what led to the controversy. The city has then said, hey, it's not our problem, it's the CRA's problem, and so we take them back. If I could, I'd like to move you to another issue, and that is I'm having a tough time with the standard of review that I have on a Rule 36B situation as to how Regency met the second prong of the Rule 36B. In connection with the admissions? Yes. I think that we've met the standard of showing that there was no prejudice. Is that the issue that you're referring to? Prong, yes. Yeah. I think that we, in terms of the review, I think the court has the ability to review what was submitted and conclude whether at the time there was a sufficient showing, actual showing, of prejudice. But didn't you admit that Regency had not applied for permits for any billboard sites that they claimed were at issue here? That was the admission. And the question is? And therefore, I guess I'm trying to figure out, how do you meet the second prong? Well, we meet both prongs because it would be in the interest of justice, because it would be the court misapplied the rule in terms of what the standard is to begin with. And then in terms of prejudice, it was not on the eve of trial. It was very far away from trial. Discovery could have been had on these issues. Most of the information was in the files of the CRA and the city to begin with. There was nothing more than just vague allusions to the possibility that people's memories would have been faded. So I think that it's certainly within the realm for this court to review that and say that's not a sufficient reason under these circumstances to deny Regency the right as part of the overall review of these on an abuse of discretion standard. It's on an abuse of discretion standard. But I think that the important point is the court approached this to begin with by applying the wrong law, which I think is not just subject to abuse of discretion, but I think is in essence a de novo review of the application of the law. I think the court would agree that if you're in the area of a review of a decision of that nature but the court misapplies the law, states what the law is and it's wrong, then that either establishes it's an abuse of discretion or it's a de novo review really of the analysis that the court was applying. But either way, it's perfectly within the realm of the court to correct that. And that is what happened here. Unless there are other questions on that, I'd like to move briefly into the area of the... You have 16 seconds. I'll try to use it efficiently. But I think the most important thing to really end with is a few comments on the cross appeal. And I would just note that, for example, in Hollywood, that all the problems that you would expect with a vague standard that is so lacking in any standards when it played itself out is exactly what occurred here. And the idea that the district court's decision on that should be overturned is without any basis. I mean, here you see the city, the CRA, in the absence of any standards, admitting that there are no standards, saying literally, I had promised you that I would send you design guideline information forthwith. Fortunately and unfortunately, there are no exact design specifications that exist. When the CRA then argues that you're supposed to just apply general CRA law, the law of all 50 states for that matter, well, they admitted at the time they didn't do that. They admitted that they had no guidelines. And not only did the CRA not apply standards that existed, it applied standards that were not even adopted to deny these applications. Specifically, one of the letters say, the design guidelines that were promulgated several years ago in Hollywood but not adopted lend some further specificity in terms of what would be an acceptable addition to a historic building. So I've already used more than my time. I apologize for that. And I would submit just that I would urge you to affirm with respect to the cross appeal and to remand with respect to the issues involving an injunction to let us prove damages as well. Thank you. Thank you. May it please the Court, Gerald Sato for the Community Redevelopment Agency of the City of Los Angeles  Probably no surprise my presentation is going to be the opposite of Mr. Tarofsky. What I've come to answer is how many fetters on discretion do we need to comply with the First Amendment? And the answer comes from cases like the city of Beaumont case. It's not the number of fetters. It's whether there's a regulatory framework in which there is guidance for the decision maker and whether that decision is going to be subject to meaningful judicial review. Now that standard is never articulated in the district court's order granting the summary judgment on the as-applied challenge. And that may be because I don't think the city of Beaumont case has been decided yet, although there was other precedent prior to the district court's order. They had a tough time deciding Beaumont that time. That would be more prescience than district court judges, even district court judges, might have. Standard of review here, of course, on summary judgment is de novo. And so this court can go back through this record and say, look, was there a lawful criteria, a lawful purpose for the decision, especially with regards to Hoover, where there actually was an administrative hearing and a final administrative action? And was there substantial evidence that is evidence which you could reasonably or in good faith believe actually furthered that purpose? Counselor, I guess my biggest problem is when I looked at the standards as related to the Hollywood proposal, then I read what, if you will, the CRA said. It said we don't have any exact design specifications to guide our review of the proposal. Now, if I have no exact specifications to guide my review of the proposal, then how am I as a judge to determine whether they met the guideline? Well, I think I would answer it this way. Let's say then, okay, some period of time has gone by. Your regency, you say, oh, I'm just getting jerked around. These design guidelines are never going to happen. You can bring that to the CRA board and say, look, there's no guidelines. But for its reasons, we believe that our billboard does further the purposes of the Hollywood redevelopment plan. We have evidence which could be subject to judicial review and so on. That is, even in the absence of very specific design criteria, I think I've made the analogy to building code. Mr. Sato, it's Judge Gould with a question for you, please. I'm having a lot of trouble seeing how the city can argue there's not unfettered discretion when there isn't a written standard that the CRA is applying. I'm also wondering why whatever the current state is of a regional band, there shouldn't be a permanent injunction that requires the CRA, when they give approvals or consider that, to be working in applying a definite written standard. That doesn't change while the process is underway, and to provide that applicants have a right of some kind of administrative appeal if they reject them. So those are my set of problems on discretion, injunction, and right of appeal. Maybe I can start with the last part of the question. First, as far as administrative appeal, any aggrieved party, any party that feels prejudiced by something staff has done, with regards to their applicant, can come to the board for an adjudication, and then every administrative action is subject to judicial review. But again, with regards to whether there's design criteria existing which are specific enough, I'd submit that what the district court was looking for and what Regency seems to be looking for is a situation where you have something like, well, there should be like 10 criteria with a noble right answer. Like if you pass or you answer a certain number of questions on the driver's license exam, you should get your exam. And I don't think that that's really possible in the context of billboard permits or land use, because the courts have said that aesthetics, I think the Lake Oswego case talked about preventing visual blight. Those are broad standards, but by broad I don't mean subjective, broad in the sense that there can be more than one reasonable answer to a particular question that comes up with regards to design. That is, you can conceive of a situation where, because of the evidence that's before the CRA board, both the decision granting an application or denying it would still be within the realm of reason if there was substantial evidence to support either decision. Now, is this ongoing now, or has the city really issued a moratorium on billboard construction, or is it just spotty and there's so many exceptions there's not really a rule? I hate to say this, I'm just the appellate attorney. I know that there is a general ban. I know that there is ongoing litigation with regards to exceptions, whether there were grandfather clauses with regards to pending applications. Really the only situation I'm prepared to talk about today is these two applications there, these two applications for the Hoover and the Hollywood last slide. I'm sorry, I can't really give you a more definitive answer on that. I think, though, if that... Is he entitled, would Regency be entitled then to, under the injunction, to get additional relief? In other words, they're asking for an injunction that the CRA, assuming we would agree that the district court didn't earn, saying that the current standards were too broad and unbridled discretion, has Regency been entitled to get its permit approved for those two? I would say not. I think this is one of the more ironic, to me anyway, one of the more ironic features of Regency's position. They've come into court to say that the particular criteria that the CRA was using to evaluate applications was flawed in some regard, too broad or not susceptible to some objective right answer. They turn around and then basically say, well, we want the district court to issue us an injunction without really making a showing of how their billboard is actually going to avoid either promoting blight, is going to not create some of the problems which even the district court has said were a legitimate concern of the CRA, the different concerns which are expressed in both of the redevelopment plans. So for that reason, I don't interpret this court's First Amendment billboard jurisprudence as basically just giving a form-shopping alternative. You think you can go to district court to get a better shake than you would have in an administrative agency or the state court, but somehow you can get a permit issued even without further evidence regarding what this proposed billboard would actually have done to that neighborhood. It doesn't seem to me that what we really could do is issue the permit or not, but we could certainly say, you know, based on the standards that we see in this record, we don't even know whether the CRA abused their discretion. We don't even know. And I think that's the worry. I point at the part of the district court's order saying, well, I think that some of these would meet proper standard. There are some that the district court just did not, although I would dispute whether, say, the criteria about would affect the view of the role of the historic palm trees. I don't know that that is so subjective as to be not susceptible to judicial review. But I think the point is I've tried to present sort of the overall purpose for which redevelopment agencies exist, as well as the criteria or the goals of the specific redevelopment areas. And I think those are legitimate. I think there is substantial evidence that supports the decision that those purposes would be furthered. As for Hollywood, because, well, the matter never came to an evidentiary hearing, we don't really know at this point what the proposal would have been. We don't know whether the board would have granted, denied, or as you sort of suggested, told the staff, but come back with criteria in 10 days or something like that. There were a number of decisions which could have been reached, which I think would have been within the realm of reason. It wasn't inevitable that permanent denial was going to be the outcome, even for Hollywood. Let me ask you this question, which is I think one of the major issues here. How does Regency lose its ability to suggest evidences to lost profits based on the motion for summary judgment that you brought? Wasn't the motion for summary judgment that you brought on liability in effect? Oh, yes. And so why is it that the court should eliminate any presentation of lost profits? Well, the court didn't stop at just its ruling on the summary judgment motion or just the pleadings from those cross motions for summary judgment. There was a further opportunity to say, well, look, here's what our evidence would be. Here's why we don't feel we had a good chance, or here's why. Are you saying that they should have brought a motion for reconsideration? Well, I mean, I don't see how the judge got to the decision he made because you didn't even argue it. Well, I think, well, I don't think it was an abuse of discretion for the judge to say, look, one of the issues which was litigated was this issue of whether there's been an inverse condemnation in which you, to establish liability, you have to put on your proof of what the injury is. So I think that the district court was correct and said, look, you've had a number of opportunities to make this point. I don't even see an offer of proof of what you think your evidence would have been as to prospective damages. Well, it's awfully easy for the judge who's sitting there trying to put this together, me having done it before, but I find it a little tough for me to make a decision on issues nobody brings to me. I mean, that's the worry that I have. I mean, I can make a lot of decisions in a lot of cases about things I want to do, but it seems to me that the party is the one who brings the issue, and then I'm supposed to make a decision about what issue the party brings. And I'm trying to read your motion and read into it that the judge could have got to lost profits, and I don't know how he got there. Well, I guess I'd only be repeating myself now. All right. Mr. Sato's, Judge Gould, for another slant on this, I share the same concern Judge Smith has stated, and I also tend to look at it within the Rule 56 framework. That is, how can regency be faulted for not submitting evidence or adequate evidence about how it would prove lost profits if there's no motion for partial summary judgment on knocking out lost profits that would put that at issue so it would know that it has to submit an affidavit or affidavits or has to ask for more time under 56F than due discovery? You know, how is it fair to regency to throw out that part of their case without more process and specific notice? Well, I do understand what Your Honor is saying. That is, when the notices of motions for summary judgment basically said no tribal issue of fact regarding liability, but my point is that thereafter there were opportunities for regency to bring this to the attention of the district court. And the district court then says, well, in the absence of that, I do have evidence, for example, that there were really never any contracts, for example, between regency and its advertisers until after permit construction was approved and underway. That there were, on the other hand, a number of, well, there was evidence of why their lost profits would not be allowed. I suppose in some sense I've come in mostly on the all or nothing argument. I'm trying to argue, look, it has applied challenges, but I don't think it would be correct to say that all we can look at are the pleadings from the summary judgment motion itself as far as whether regency had a fair shot on this issue of damages. Any further? I have no other questions. All right. Thank you very much. Any questions for appellant? Okay. The case of Regency Outdoor Advertising v. City of Los Angeles is submitted and we'll recess for five minutes.
judges: Gould, Ikuta, Smith N. R.